IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

ANGIE HOSKINS FOR TANEA SHATRICE HOSKINS          PLAINTIFF

v.          NO. 3:20-cv-169-NBB-JMV

ANDREW M. SAUL, COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION          DEFENDANT

### REPORT AND RECOMMENDATION

The Plaintiff applied for SSI benefits on behalf of her child in May 2018, alleging disability due to nephrotic syndrome and retina pigmentosa. Tr. 145-50. The child was 16 years old at the time of the SSI application. After the application was denied both initially and on reconsideration, a hearing before an administrative law judge (ALJ), was held on May 13, 2019. Both Plaintiff and the child appeared and testified with the assistance of counsel. Tr. 27-28.

After considering the full evidence of record, the ALJ issued a hearing decision on August 21, 2019, finding that the child was not disabled under the Social Security Act's standard for child's disability. Tr. 8-21. The ALJ found that the child had the severe impairments of nephrotic syndrome, borderline intellectual ability, and migraine headaches, but that her limitations did not meet the criteria of any listed impairment. Tr. 11-13.

The ALJ then performed a functional equivalence analysis, finding that the child had a "marked" degree of limitation in the domain of "acquiring and using information;" "less than marked" limitations in the domains of "attending and completing tasks," "interacting and relating with others," "caring for yourself," and "health and physical well-being;" no limitations in the remaining domain of "moving about and manipulating objects." Tr. 18-25. Based on these findings, the ALJ found that the child's limitations were not functionally equivalent to a listed

impairment, and that she was not disabled under the Act's definition of child's disability. Tr. 20-21. The Appeals Council denied Plaintiff's request for review by notice dated April 15, 2020, making the ALJ's decision the Commissioner's final administrative decision for purposes of federal court review under 42 U.S.C. § 405(g). Tr. 1-4. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. See 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. See 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court recently explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence… is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431,

434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the "1996 Act"), which amended the statutory standard for children seeking SSI benefits based on disability. *See* Pub. L. 104-193 § 211(a), 110 Stat. 2105, 2188-2189 (codified at 42 U.S.C. § 1382c(a)(3)(C)). Prior to enactment of Pub. L. 104- 193, a child would be considered disabled if she had a medically determinable physical or mental impairment that met the statutory duration requirement and that was "of comparable severity" to an impairment that would disable an adult. See 42 U.S.C. § 1382c(a)(3)(A) (1994); 20 C.F.R. § 416.924 (1996). The 1996 Act revised this standard to one under which a child seeking SSI benefits based on disability will be found disabled if he has a medically determinable impairment "which results in marked and severe functional limitations," and which meets the statutory duration requirement. *See* 42 U.S.C. § 1382c(a)(3)(C). This revised disability standard became effective on August 22, 1996 and applies to all disability claims adjudicated after that date, including this case. *See* Pub. L. No. 104-193 § 211(d)(1)(A), 110 Stat. at 2190.

The regulations applying the revised child's disability standard direct that a child will be considered disabled if she has an impairment that meets, medically equals, or functionally equals an impairment in the Listing of Impairments found at 20 C.F.R. Pt. 404, Sub pt. P, App. 1. *See* 20 C.F.R. § 416.924(a), (d). If the child does not meet a listed impairment, the Commissioner will perform a functional equivalence analysis to determine whether the child's impairments are functionally equivalent to a listed impairment. *See* 20 C.F.R. § 416.926a(a). The functional equivalence evaluation requires findings in six functional domains: (1) acquiring and using

information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). If a child has "marked" limitations in two domains, or an "extreme" limitation in one domain, he will be considered to have an impairment of "listing level severity." 20 C.F.R. § 416.926a(d).

A limitation is "marked" when it "interferes seriously with your ability to independently initiate, sustain, or complete activities," and is also defined as a limitation that is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i). A limitation is "extreme" when it "interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). "Extreme" is the rating given to the worst limitations.

### A. The Record Does Not Document Excessive School Absenteeism for T.S.H.

As her first claim of error, Plaintiff argues that the ALJ failed to take into account "absenteeism" from school that resulted from the subject child's impairments. See Plaintiff's Brief at 4-6. However, there is no evidence that the child was absent from school an excessive amount during the relevant period of May 2018 to August 2019. At the May 2019 hearing, the child testified that she had been missing some school due to her head and tiredness, and Plaintiff testified that though the child was not in special education, she was struggling in some subjects. Tr. 35, 40. Most notably, however, Plaintiff testified that the child had "missed about eight days" of school in the current school year, with "several check-ins and check-outs" where she would leave early or arrive late. Tr. 44. Plaintiff argues this record makes the child here similarly situated to the claimant in *Wiltz v. Barnhart*, 484 F. Supp. 2d 524 (W.D. La. 2006), but this is unpersuasive. There are significant differences between that case and this. First, as the commissioner points out, the *Wiltz* decision addressed both the child's and adult standards for disability, and part of what the *Wiltz*

court expressed concern with was whether the claimant's limitations would "cause him to be frequently absent from work," a concern not at issue here. *Wiltz*, 484 F. Supp. 2d at 534. Second, the approximately eight days of absence that Plaintiff reported for the child at issue here during the 2018-2019 school year does not approach the degree of interference described in *Wiltz*, where the claimant had missed 21 days of school as of March 2001, and then went into almost two years of "homebound education" starting in November 2001. Tr. 44. In short, Plaintiff's claim that the ALJ failed to consider the impact of an extreme level of absenteeism lacks a factual foundation and substantial evidence supports the ALJ's finding that the absences were not excessive.

> B. The ALJ Properly Performed T.S.H.'s Functional Equivalence Analysis

Plaintiff also contends that the ALJ should have assessed a "marked" rather than "less than marked" degree of impairment in each of the following domains: "attending and completing tasks," "interacting and relating with others," or "health and physical well-being." Pl. Br. at 7. As Plaintiff notes, a second domain with "marked" impairment would lead to a finding of disability. *See* Pl. Br. 7; 20 C.F.R. § 416.926a(d). Plaintiff bases her argument solely on the June 27, 2019, consultative psychological examination report by Michael Whelan, Ph.D., which the ALJ found to be persuasive. *See* Pl. Br. at 7; Tr. 15, 579-81. As an initial matter, and as the Commissioner notes, contrary to Plaintiff's suggestion, no single piece of evidence is controlling in the functional equivalence analysis. 20 C.F.R. § 416.926a(f)(1) ("we examine all the information we have in your case record about how your functioning is limited because of your impairment(s)"). The Commissioner argues and the undersigned finds persuasive, that the ALJ properly considered the record as a whole, including Plaintiff and the child's testimony, her school records and IEP plan, and her medical history. Moreover, Plaintiff's argument is actually rebutted by Dr. Whelan's clinical findings, medical opinions, and observations, which support the ALJ's finding that the

child did not experience "marked" impairments in the domains Plaintiff identifies. Because Plaintiff does not dispute the ALJ's findings in the other three functional domains, "acquiring and using information" (marked limitation), "moving about and manipulating objects" (no limitation), and "caring for yourself" (less than marked limitation), they are not addressed herein.

### i. Attending and Completing Tasks

The ALJ found that the child here had a "less than marked" degree of impairment in this domain. Tr. 16-17. As the ALJ noted, her school records documented that she was in regular classes with allowances for extra time in testing and was able to study and turn in homework assignments and was making sufficient progress in her annual program goals. Tr. 17, 209-16. While the child performed below grade level in math and reading, her IEP report stated that "when she sets her mind to something and develops an interest in it, she usually excels." Tr. 215. Dr. Whelan's report also stated he was "not convinced that the child does her best on testing," and he noted that her ACT score indicated better intellectual functioning than was reflected in his own testing, which reflected considerably higher reading than math scores. Tr. 579-80. While Dr. Whelan opined that the child "will learn slowly with borderline intelligence," he also noted that she "can follow simple directions." Tr. 580. This evidence supports the ALJ's finding that the child had a "less than marked" degree of impairment in the domain of attending and completing tasks. Tr. 17.

### ii. Interacting and Relating with Others

As noted, the ALJ also found that the child had a "less than marked" degree of impairment in this domain. Tr. 17-18. The ALJ noted reports that the child has a hard time getting along with others, but also that her IEP stated that she "rarely gets in trouble at school." Tr. 18, 215. Dr. Whelan observed that she was "polite and cooperative during the exam." Tr. 579. And, while Dr.

Whelan noted reports that the child "has a bad attitude" and talks back to her mother and teachers, she "mostly" got along with her twin sister and there were no reports of difficulties with peers though that the child "may have a mild mood disorder to be ruled out in the future." Tr. 579-81. This evidence supports the ALJ's finding that the child had a "less than marked" degree of impairment in the domain of interacting and relating to others. Tr. 18.

### iii. Health and Physical Well-Being

Regarding the ALJ's finding that the subject child had a "less than marked" degree of impairment in this domain as well, Plaintiff holds out Dr. Whelan's report as evidence of a marked degree of impairment in this functional domain instead. Tr. 20. The Commissioner notes – as an initial matter – that as a psychologist, Dr. Whelan is not qualified to render a medical opinion addressing the child's physical well-being. Nevertheless, Dr. Whelan did state in his report that the child's "physical appearance was unremarkable," indicating that he did not observe any visible signs of physical impairment or limitation. Tr. 579. Dr. Whelan also noted that the child reported she had learned to cook breakfast food, could wash dishes and fold clothes, and was studying to get her driver's permit. *Id.* These reported activities are not consistent with a marked degree of limitation in her physical well-being, and Plaintiff's claim that Dr. Whelan's report reflects a "marked" degree of impairment in this domain lacks support in the report itself. To the contrary, Dr. Whelan's report, to the extent it is relevant to the question of the child's health and physical well-being, supports the ALJ's finding of no more than a moderate degree of limitation. Tr. 20.

In sum, contrary to Plaintiff's contentions, Dr. Whelan's June 2019 examination report does not reflect a "marked" degree of impairment in any of the above-referenced functional domains. To the contrary, this report stated that the child had no observable physical issues, engaged in typical activities for her age, could follow simple directions, and experienced some

degree of difficulty interacting with her mother and teachers, but had no evidence of issues interacting with her peers. Tr. 579-81. Other evidence of record such as the IEP plan indicated that the child did better in some school subjects than in others, prefers to avoid accommodations such as separate testing, and "rarely gets in trouble at school and studies to pass her courses." Tr. 215.

In short, it is the recommendation of the undersigned that the ALJ's finding that the child experiences a "less than marked" degree of limitation in the above-referenced functional domains is supported by substantial evidence of record showing that limitations are present, but do not "interfere seriously" with her functioning. Tr. 16-20; 20 C.F.R. § 416.926 a(e)(2)(i).

Plaintiff's request that this Court reweigh the evidence in the child's favor is specifically outside the scope of the judicial review authorized by 42 U.S.C. § 405(g). *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). Plaintiff has shown no error in the ALJ's findings, which are supported by substantial evidence of record and properly within his discretion as the finder of fact.

## CONCLUSION

For the reasons set forth herein, it is the undersigned's report and recommendation that the Commissioner's final administrative decision, being free of prejudicial error and supported by substantial evidence, should be affirmed.

The Plaintiff is referred to L. U. Civ. R. 72(a)(3) for the applicable procedure in the event any party desires to file objections to the findings and recommendations herein contained. The Plaintiff is warned any such objections are required to be in writing and must be filed within fourteen (14) days of this date. Failure to timely file written objections to the proposed findings, conclusions and recommendations contained in this report will bar an aggrieved party, except upon grounds of plain error, from attacking on appeal unobjected-to proposed factual findings.

Respectfully submitted this 3rd day of June, 2021.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**